# EXHIBIT 1

9/28/2023 11:47 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-23-004790
Melissa Romero

**VELVA L. PRICE**

District Clerk, Travis County
Civil Division (512) 854-9457

## Process Request Form

**CASE NUMBER:** D-1-GN-23-004790          **COURT:** 201st

**NAME(S) OF DOCUMENTS TO BE SERVED:** Plaintiff's Original Petition

**FILE DATE:** 8/29/2023
Day/Month/Year

**SERVICE TO BE ISSUED ON:** (Please List Exactly As The Name Appears In The Pleading To Be Served- Additional Parties on page 2)

1.
**Issue Service to:** Eastern Airlines, LLC

**Address of Service:** 6655 S. Eastern Avenue #250

**City, State & Zip:** Las Vegas, NV 89119

**Agent:** (if applicable) By serving the Texas Secretary of State Jane Nelson or her Agent Successor

**TYPE OF SERVICE/PROCESS TO BE ISSUED:**

[✓] **Citation**  [ ] **Citation by Posting**  [ ] **Citations Rule 106 Service**  [ ] **Hague Convention Citation**
[ ] **Secretary of State/ Highway Commission/Commissioner of Insurance Citation**
[ ] **Citation by Publication: Newspaper**_____
[ ] **Show Cause**  [ ] **Notice**  [ ] **Temporary Restraining Order**  [ ] **Temporary Protective Order**
[ ] **Capias**  [ ] **Attachment**  [ ] **Habeas Corpus**
[ ] **Subpoena**  [ ] **Garnishment**  [ ] **Injunction**  [ ] **Sequestration**  [ ] **Abstract**  [ ] **Execution**
[ ] **Other (Please Describe)** _____

**SERVICE BY** (check one):

( ) **ATTORNEY/REQUESTER:** (Email) _____
(•) **PROCESS SERVER:** (Email) Austin Process, LLC (info@austinprocess.com)
( ) **PICK UP:** (Person/Agency Name and Phone Number) _____
( ) **TRAVIS COUNTY CONSTABLE:** Please select PCT if you have a preference ( )1 ( )2 ( )3 ( )4 (•)5
( ) **CERTIFIED MAIL**
( ) **OTHER,** explain: _____

**Requested by:**

**Name:** Sara Clark

**Mailing Address:** 303 Colorado Street, Suite 2400

**City, state, Zip:** Austin, TX 78701

**Phone Number:** 512-495-6300

**E-mail Address:** sclark@scottdoug.com

**Notes/Comments to the clerk:** Please email citation to Sara Clark at sclark@scottdoug.com. We will handle sending it
to our process server.

## Civil Process Request Form - Additional Parties

**SERVICE TO BE ISSUED ON:** (Please List Exactly As The Name Appears In The Pleading To Be Served)

2.
   **Issue Service to:** _____

   **Address of Service:** _____

   **City, State & Zip:** _____

   **Agent:** (if applicable) _____

3.
   **Issue Service to:** _____

   **Address of Service:** _____

   **City, State & Zip:** _____

   **Agent:** (if applicable) _____

4.
   **Issue Service to:** _____

   **Address of Service:** _____

   **City, State & Zip:** _____

   **Agent:** (if applicable) _____

5.
   **Issue Service to:** _____

   **Address of Service:** _____

   **City, State & Zip:** _____

   **Agent:** (if applicable) _____

6.
   **Issue Service to:** _____

   **Address of Service:** _____

   **City, State & Zip:** _____

   **Agent:** (if applicable) _____

7.
   **Issue Service to:** _____

   **Address of Service:** _____

   **City, State & Zip:** _____

   **Agent:** (if applicable) _____

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angie Espinoza on behalf of Sara Clark
Bar No. 00794847
aespinoza@scottdoug.com
Envelope ID: 80041723
Filing Code Description: OTHER
Filing Description: PROCESS REQUEST FORM CITATION-EASTERN
AIRLINES LLC SOS
Status as of 9/29/2023 9:36 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Casey LDobson | | cdobson@scottdoug.com | 9/28/2023 11:47:00 AM | SENT |
| Sara WClark | | sclark@scottdoug.com | 9/28/2023 11:47:00 AM | SENT |
| Peter Barlow | 24098860 | pbarlow@sgrlaw.com | 9/28/2023 11:47:00 AM | SENT |
| Angie Espinoza | | aespinoza@scottdoug.com | 9/28/2023 11:47:00 AM | SENT |
| Susie Smith | | ssmith@scottdoug.com | 9/28/2023 11:47:00 AM | SENT |
| Phuc Phan | | pphan@scottdoug.com | 9/28/2023 11:47:00 AM | SENT |

Copy from re:SearchTX

8/29/2023 2:56 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-23-004790
Rosa Oneal

D-1-GN-23-004790

CAUSE NO. _____

| | | |
|---|---|---|
| SUMMIT SKY ADVISORY, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| | § | |
| EASTERN AIRLINES, LLC, and | § | 201ST, DISTRICT COURT |
| JET MIDWEST, INC. | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Summit Sky Advisory, LLC ("Summit"), files this Original Petition ("Petition") against Defendants Eastern Airlines, LLC ("Eastern") and Jet Midwest, Inc. ("Jet Midwest"). In support of this Petition, Summit respectfully shows as follows:

### I.    INTRODUCTION

This lawsuit arises from the sale of a General Electric model GE90-115B jet engine, the sort that powers second-generation Boeing model 777 widebody jet aircraft in passenger and cargo service around the world. Summit agreed to buy the engine for $6.3 million from Eastern in a transaction that lasted, from beginning to closing, just a matter of days. This was commercially desirable because the engine was out-of-service in storage in the Mojave Desert of California, and Summit had lined up a customer to take the engine on lease immediately in order to put back into service a Boeing 777 that was then stranded on the ground (an "Aircraft On Ground" or "AOG") at New Istanbul International Airport in Turkey. Two aspects of the deal made the transaction possible on this timeline: (1) Jet Midwest had previously obtained a video borescope inspection of the engine during its time in storage in the desert and provided the inspection report to Summit; and (2) Eastern warranted that the engine was and would be at delivery "serviceable," which is a term of art in the aviation industry meaning, generally, "in such a condition that the equipment

4894-4421-0812

Copy from re:SearchTX

may immediately enter safe service." The transaction closed, and Summit arranged for prompt shipment to Turkey, where Summit's affiliate had a leasing customer, an airline from another country, desperately awaiting the engine to alleviate its AOG 777.

When the propulsion section of the engine arrived in Istanbul, Summit's affiliate's leasing customer arranged for a borescope inspection by Turkish Technic, a maintenance facility on-site at Istanbul Airport, prior to accepting the engine on lease and putting it into service. Turkish Technic found certain cracks in the high-pressure turbine and a dent on the leading edge of a blade in the high-pressure compressor. The discrepancies rendered the engine unserviceable. The airline naturally refused to accept the engine on lease. Summit then arranged to provide the airline another engine so it could end the AOG situation.

Summit promptly notified Eastern of the findings by Turkish Technic and the unserviceable condition of the engine. Summit asked Eastern to make good on its warranty that the engine would be in serviceable condition. Eastern refused to accept responsibility for making the engine serviceable, as it had warranted. For months thereafter, the engine remained in storage in Istanbul. While Eastern continued to refuse to make good on the warranty, Summit made arrangements to induct the engine for a shop visit at MTU Maintenance in Hannover, Germany. The shop visit will begin within a matter of days and is estimated to last four months or more at a budgeted cost of $2,150,000 to resolve the discrepancies found by Turkish Technic and restore the engine to serviceable condition.

After receiving the borescope inspection findings by Turkish Technic, Summit revisited the borescope inspection report provided by Jet Midwest and Eastern as an inducement to the transaction. Thereupon, Summit realized that the one area of the engine where Turkish Technic found discrepancies rendering the engine unserviceable was not mentioned at all in the borescope

2

Copy from re:SearchTX

inspection report presented by Jet Midwest and Eastern, even though the maintenance manual required inspection of that area as part of a complete borescope inspection, while the report noted no discrepancies found in another area where Turkish Technic indeed found discrepancies. The reasons for the omission and mis-statement of condition are presently unknown to Summit. No explanation for the omission presents itself. In any event, the report Jet Midwest and Eastern provided was incomplete and materially misleading or outright false.

Having refused to make good on its express warranty in the parties' contract, Eastern must now face a money judgment for damages for breach of the warranty and for its negligent misrepresentations made in connection with the transaction, in particular by inducing Summit to purchase the engine by presenting as complete a borescope inspection report that was not, in fact, complete, in that the report had a material deficiency that concealed the true condition of the engine: unserviceable.

## II.    DISCOVERY CONTROL PLAN & RULE 47(C) STATEMENT

1.      Summit intends to conduct discovery under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

2.      In accordance with Rule 47 of the Texas Rules of Civil Procedure, Summit states that, at this time, it seeks monetary relief over $1,000,000.00.

## III.    PARTIES

3.      Plaintiff Summit Sky Advisory, LLC, is a limited liability company organized and existing under the laws of the State of Texas that maintains its principal place of business in Austin, Travis County, Texas.

4.      Defendant Eastern Airlines, LLC, is a limited liability company organized and existing under the laws of the State of Nevada that maintains its principal place of business at 550

4894-4421-0812

Copy from re:SearchTX

E. Swedesford Road, Suite 210, Wayne, Pennsylvania 19087. Eastern may be served with process by serving its registered agent for service of process, Eastern Airlines, LLC, Manager, 6655 S. Eastern Ave. #250, Las Vegas, NV, 89119.

5.      Defendant Jet Midwest, Inc., is a corporation organized and existing under the laws of the State of Kansas that maintains its principal place of business at 9200 NW 112 Street, Kansas City, Missouri. Jet Midwest may be served with process by serving its registered agent for service of process, C T Corporation System, 120 S. Central Ave., Clayton, Missouri, 63105.

## IV.    JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over the lawsuit because the amount in controversy exceeds the Court's minimum jurisdictional requirements.

7.      The Court has personal jurisdiction over Eastern because this action arises out of its written agreement with Summit, wherein Eastern and Summit agreed that the state and federal courts located in Travis County, Texas, shall have exclusive jurisdiction to settle any dispute arising out of or in connection with the parties' agreement or any non-contractual obligations connected with the parties' agreement. By agreeing to such forum-selection clause, Eastern submitted itself to the personal jurisdiction of this Court for matters within the scope of the clause. All claims made in this action fall within the scope of such clause.

8.      The Court has specific personal jurisdiction over Jet Midwest because Jet Midwest engaged in a course of conduct in connection with the engine sale agreement between Summit and Eastern that included directing numerous communications to Summit in Travis County, Texas, for the purpose of inducing Summit to engage in the engine sale transaction with Eastern. This course of conduct specifically included transmitting the incomplete borescope inspection report to

4

Copy from re:SearchTX

Summit in Travis County, Texas, which did in fact induce Summit to close the engine-sale transaction with Eastern in and from Travis County, Texas.

9.      Venue is mandatory in Travis County under Section 15.020(b) of the Texas Civil Practice and Remedies Code because this suit arises from a "major transaction" as defined by Section 15.020(a) of the Texas Civil Practice and Remedies Code. The consideration for the written agreements underlying this lawsuit has an aggregate value exceeding $1,000,000.00, and those agreements contain a venue-selection clause requiring that venue be in Travis County, Texas.

## V.    BACKGROUND FACTS

10.     Summit realleges and incorporates by reference the foregoing paragraphs.

**A.     Eastern had a GE90 engine in storage in the desert, and Summit had a leasing customer in urgent need for a GE90 engine to alleviate an AOG situation.**

11.     Summit is a commercial aviation trading and leasing company that invests in commercial aircraft and engines for various asset-management purposes, including in some instances placing the aircraft on short- or long-term leases.  Summit and its associated businesses from time to time assist customers, typically airlines, with locating available replacement equipment, such as spare engines, and putting them into service.

12.     Eastern is an airline currently offering scheduled commercial airline service between Miami and Santo Domingo, Dominican Republic, for passengers, as well as charter service for passengers.  Eastern also offers cargo service using available "belly space" on passenger aircraft or dedicated freighter aircraft.  Founded in 2010 and formerly known as Dynamic Airways, the company later secured the rights to use the name and logo of the original Eastern Air Lines that operated from 1926 to 1991.  Eastern presently has a fleet of approximately

4894-4421-0812

Copy from re:SearchTX

16 widebody Boeing 767 and 777 aircraft, some of which are in regular service and others of which are in storage.

14.    Jet Midwest is a commercial aircraft, engine, and spare parts trading company based in Kansas City, Missouri, that provides asset-management services to owners, among other support services.

14.    General Electric model GE90 jet engines are a family of high-bypass turbofan aircraft engines built by GE Aviation for the Boeing model 777 family of passenger and cargo aircraft.  GE90s have thrust ratings from 81,000 to 115,000 pounds.  One of the largest and most powerful jet engines in the world, GE90s are one of three options for powering three 777 variants, and the only option for powering the other three 777 variants (the second-generation variants: 777-300ER, 777-200LR, and 777-200F).  GE90s have been in production since 1993 and remain in production to this day.

15.    All Nippon Airways ("ANA") of Japan is a major operator of Boeing 777 aircraft.  Like many international airlines, ANA experienced a dramatic drop in passenger demand during the worst of the COVID-19 pandemic, with cross-border travel to and from Japan especially limited.  Like dozens of other aircraft owners and operators, ANA took many aircraft out of operation during the pandemic and stored a number of aircraft at facilities in desert locations around the world.  During the pandemic, one or more of ANA's Boeing 777-300ER aircraft were ferried to Mojave, California, for storage.

16.    Upon information and belief, when one of ANA's 777-300ER aircraft arrived in Mojave for induction into a storage facility there, Jet Midwest undertook to provide asset-management services for the owner or operator.  Among the steps Jet Midwest took was to arrange for a video borescope inspection of the two GE90-115B engines then on wing on ANA's aircraft

6

Copy from re:SearchTX

going into storage. One of the purposes of conducting a borescope inspection of engines like these around the time they go into storage in the desert is to ascertain and document the condition of the engine.

17.     A borescope inspection of a commercial aircraft engine such as the GE90 involves inserting a video camera on a tube into certain ports in the engine designed to allow the inspector to have a view of internal areas of the engine. Among other things, an inspector conducting or reviewing a video borescope of an engine like a GE90 is looking for foreign object damage ("FOD"), corrosion, weakening of metal, unusual burn patterns, and wear and tear outside of acceptable limits, as stated in the aircraft maintenance manual. An inspector conducting a video borescope of an engine like a GE90 does so in accordance with a process and, essentially, a set of instructions set forth in the manufacturer's aircraft maintenance manual. Properly conducting a video borescope inspection of a GE90 involves following all the steps set forth in the maintenance manual.

18.     In September 2021, Eastern announced plans to expand its fleet to include a number of 777 aircraft.

19.     Eastern acquired one or more Boeing 777-300ER aircraft formerly operated by ANA in late 2021, including at least one then parked at a storage facility in Mojave, California.

20.     Following the acquisition of the ex-ANA 777-300ER, Eastern decided not to put the aircraft into service immediately, but rather to leave the aircraft in storage in the desert for an indeterminate period of time until demand justified putting the aircraft into service.

21.     Following the acquisition of the ex-ANA 777-300ER, Eastern arranged with Jet Midwest to continue to manage the asset for Eastern during its storage in the desert, including the airframe, the two GE90-115B engines that equipped the airframe, and other components.

7

4894-4421-0812

Copy from re:SearchTX

While the aircraft remained stored in the desert, the two GE90-115B engines remained on wing (as opposed to being removed from the wing and placed on an engine stand).

22.     In late February or early March, an affiliate of Summit became aware of a prospective customer's urgent need for a GE90-115B engine.  At the time, the airline operated three Boeing 777-200LR aircraft on primarily international routes.  One of those aircraft had landed at New Istanbul International Airport, about 1,600 miles from its home base in another country, and maintenance staff determined that one of the GE90-115B engines then equipping the aircraft had to be removed from service for an extended period of time for maintenance.  With only one serviceable engine, the aircraft could not fly.  In this way, the airline had one of its three Boeing 777-200LR aircraft declared "AOG," meaning the aircraft was stranded on the ground, unable to carry passengers or cargo, and hence unable to make money for the airline.

23.     The airline did not then possess a serviceable spare engine that could be sent to Istanbul to get the aircraft back into service.

24.     For the airline, having one of only three widebody aircraft in its fleet AOG at a foreign airport presented extreme operational challenges, starting with re-accommodating passengers and cargo scheduled to travel on flights that could not be operated due to the aircraft being AOG.

25.     The airline entered into a transaction with an affiliate of Summit to take one GE90-115B engine on short-term lease.  The affiliate of Summit planned to acquire the GE90-115B engine from Summit and immediately put it out on lease to the airline customer.  For its part, Summit planned to acquire the engine from Eastern in a transaction facilitated by Jet Midwest.

26.     The airline's lease transaction with Summit's affiliate was intended to alleviate the AOG situation for the airline's 777-200LR then stranded at New Istanbul International Airport.  In

8

Copy from re:SearchTX

these circumstances, it was critical to the airline that the engine taken on lease be serviceable so that it could immediately go into service and thus end the AOG situation.

**B.    Summit contracted with Eastern to purchase a GE90-115B engine, in a transaction handled by Jet Midwest on behalf of Eastern.**

27.    On March 6, 2023, Summit and Eastern entered into an Engine Purchase Agreement (the "Purchase Agreement") for the purchase and sale of one used General Electric model GE90-115B jet engine bearing manufacturer's engine serial number ("ESN") 906272, which was one of the engines formerly operated by ANA then in storage in the desert, for the purchase price of $6,300,000.  Under the terms of the Purchase Agreement, the target closing date for the transaction was March 10, 2023 (just four days after going under contract), and the outside closing date was March 13, 2023 (just one week after going under contract).

28.    The parties were in a position to close the transaction that quickly because a considerable amount of due diligence around the acquisition had been done earlier.  Those prior discussions and disclosures not only provide important context for the transaction but also shed light on the meaning of certain critical deal terms.

29.    At all relevant times, Jet Midwest acted as, effectively, an agent for Eastern as the owner of the equipment, with Jet Midwest conducting the negotiations on behalf of the owner and providing all manner of information pertinent to the sale of equipment such as GE90-115B engines.

30.    Summit had done business with Jet Midwest in the past, with a prior transaction closing in late 2021.  Jet Midwest was known to Summit as an asset manager who had access to commercial aircraft engines for sale.

9

4894-4421-0812

Copy from re:SearchTX

31.     Summit and Summit's affiliate had been in discussions with Jet Midwest to acquire a package of GE90-115B aircraft engines, possibly four or five, since the latter part of 2022, including two or more engines in the desert formerly operated by ANA.  If the engines were acquired, Summit and Summit's affiliate planned to place the engines on lease to existing customers of Summit's affiliate, or keep the engines in storage for some time until needed to equip certain Boeing 777 aircraft in the fleet of Summit's affiliate.  The placement of the engines on lease to an operator would have depended in part on the remaining serviceable life (time and cycles available before a scheduled shop visit) of a given engine and the needs of Summit's affiliate's fleet plan.

32.     Summit's evaluation of the potential acquisition in late 2022 included review of engine records and maintenance information.

33.     On December 1, 2022, in connection with the possible acquisition of the package of engines, Jet Midwest provided Summit and Summit's affiliate a report on the borescope inspection of ESN 906272, one of the GE90-115B engines formerly operated by ANA but then in storage in the desert.  The borescope inspection report on ESN 906272 indicated that the inspection of the engine was done on February 27, 2021, in Mojave, California, as an "Acceptance Inspection," meaning it was done around the time the engine was inducted for storage.

34.     The February 27, 2021 borescope inspection report for ESN 906272 contained detailed findings by the inspector and still images of internal portions of the engine. In many instances, the inspector reported "no significant discrepancies."  In a few instances, the inspector noted findings that were within acceptable tolerances per the Aircraft Maintenance Manual (the "AMM").  Overall, the inspector deemed ESN 906272 "SERVICEABLE."

10

Copy from re:SearchTX

35.     Jet Midwest also provided borescope inspection reports for a number of the other engines under consideration for acquisition by Summit at that time.

36.     The potential transaction to acquire the package of four or five GE90-115B engines did not come to fruition in 2022 because the price for the engines could not be agreed.

37.     In the first part of 2023, discussions between Summit, Summit's affiliate, and Jet Midwest resumed, with a focus on acquiring two GE90-115B engines, instead of a package of four or five. At the time, Summit and Summit's affiliate would have preferred to acquire three engines, but Jet Midwest indicated that a third was not available.

38.     By early March 2023, discussions between Summit and Jet Midwest around a purchase and sale of two GE90-115B engines had reached an advanced stage, as Jet Midwest provided Summit with copies of records for the engines, chain of title documents, and other pertinent information.

39.     On March 6, 2023, Summit and Eastern entered into the Purchase Agreement for ESN 906272 and a separate purchase agreement to acquire another GE90-115B, ESN 906145. At that time, ESN 906272 and ESN 906145 were both on wing on the Boeing 777-300ER formerly operated by ANA but then owned by Eastern and in storage in the desert.

40.     For Summit, it was an important term of the transaction, including specifically the Purchase Agreement to acquire ESN 906272, that the engine be serviceable at the time of the sale. The price Summit agreed to pay for ESN 906272 contemplated receiving a serviceable engine.

41.     Around the same time as Summit and Eastern agreed to the Purchase Agreement, Summit became aware that Summit's affiliate had a potential short-term lease customer — the airline with the 777-200LR AOG in Istanbul — in urgent need of a GE90-115B engine.

4894-4421-0812

Copy from re:SearchTX

42. As of March 2023, considering the number of suitable GE90-115B engines that were in service with airlines around the world, or held in reserve by the airlines as spares, or undergoing shop visits, the available supply of suitable and immediately available GE90-115B engines was limited. Under contract to buy two GE90-115B engines from Eastern, and affiliated with a leasing company who had a leasing customer then in urgent need for that model engine, Summit was especially well positioned to profit from a series of transactions that created value for all concerned.

43. Summit closed the Purchase Agreement transaction and acquired ESN 906272 from Eastern on March 13, 2023.

**C.    Summit and Summit's affiliate send ESN 906272 to Istanbul, and the airline immediately discovers a problem.**

44. At the time Summit closed the transaction with Eastern to acquire ESN 906272, Summit planned to transfer title to the engine to Summit's affiliate, which would in turn place the engine on short-term lease with the airline customer suffering the AOG in Istanbul.

45. Following the purchase of ESN 906272, Summit did, as planned, transfer title to the engine to Summit's affiliate, which had agreed to a short-term lease to the airline with the AOG 777-200LR in Istanbul.

46. Promptly after closing the transaction, Eastern arranged to have ESN 906272 and ESN 906145 removed from the wing of the Eastern-owned 777-300ER formerly operated by ANA, and Summit arranged for technicians to take possession of the engines.

47. After taking possession of the engines, Summit arranged to have the fan and propulsor of ESN 906272 separated so that the propulsor (the power plant) could be more easily shipped to Istanbul where it could be delivered to the airline customer of Summit's affiliate.

4894-4421-0812

Copy from re:SearchTX

48.    When the propulsor of ESN 906272 arrived in Istanbul around March 31, 2023, the airline customer arranged for Turkish Technic (the maintenance arm of Turkish Airlines) to conduct a borescope inspection of the engine prior to accepting delivery of the engine under the short-term lease with Summit's affiliate and having the engine enter service.

49.    The borescope inspection of ESN 906272 by Turkish Technic for the airline was conducted in a manner fully consistent with the AMM and to an extent consistent with best practices among airlines intending to take delivery of leased engines.

50.    On April 8, 2023, the airline notified Summit's affiliate that ESN 906272 had failed its borescope inspection and been found unserviceable.

51.    On April 9, 2023, the airline provided Summit's affiliate a copy of the borescope inspection report prepared by Turkish Technic. Summit's affiliate relayed the report to Summit.

52.    Turkish Technic's borescope inspection of ESN 906272 revealed the following discrepancies:

- The leading edge of one High Pressure Compressor Stage 3 blade had a dent measuring 0.004 inches deep at the airfoil root radius area. According to the AMM, the maximum permitted depth for a dent in a compressor blade at that location is 0.003 inches. Because the engine had an "out of limits" dent in a blade, the engine was deemed unserviceable.

- Some High Pressure Turbine Stage 2 shrouds had circumferential cracks. According to the AMM, such cracks are not permitted. Because the engine had impermissible cracks, the engine was deemed unserviceable.

53.    After completing the borescope inspection, Turkish Technic liaised with General Electric, the manufacturer of the engine, inquiring about a special dispensation to approve ESN

13

4894-4421-0812

Copy from re:SearchTX

906272 for limited service, a small number of hours or cycles. General Electric declined and, based on the reported findings, declared the engine unserviceable.

54.    ESN 906272 was, in fact, unserviceable at the time Eastern sold the engine to Summit.

55.    As a result of ESN 906272 being found unserviceable during the inspection by Turkish Technic, the airline customer refused to take delivery of the engine and begin its lease term with Summit's affiliate.

56.    This left the airline customer's 777-200LR still AOG in Istanbul.

57.    To satisfy the airline customer, Summit then arranged to have the other engine that Summit purchased from Eastern at the same time, ESN 906145, shipped to Istanbul. Around April 28th, 2023, the substitute engine passed inspection in Istanbul, was accepted by the airline customer under an amended lease (the amendment changed the identity of the leased engine from ESN 906272 to ESN 906145), and entered service on the wing of the airline's 777-200LR, finally bringing the AOG situation to an end after almost two months — a long time for an airline to have a widebody airframe AOG.

58.    The consequence of Turkish Technic's finding ESN 906272 unserviceable was that the engine could not enter service with any airline unless and until it underwent maintenance to resolve the discrepancies identified during the borescope inspection, and any other unknown discrepancies that might be found during the shop visit to resolve the known discrepancies. Being found unserviceable also meant Summit and Summit's affiliate could not lease the engine to any airline customer, because no reasonable airline would accept the engine in unserviceable condition (unless at a substantial discount to account for the anticipated cost of the shop visit and with a rent holiday during the time in service while the engine was in the shop).

14

Copy from re:SearchTX

**D.    Summit demands Eastern make good on its warranty that the engine was serviceable.**

59.    After learning that Turkish Technic found ESN 906272 unserviceable, Summit reported to Jet Midwest the borescope inspection findings and the conclusion that the engine was unserviceable.

60.    In an effort to resolve the warranty issue, Summit offered a variety of commercial solutions, including most simply that Eastern agree to pay for the shop visit to restore ESN 906272 to serviceable condition.  Eastern declined that and all other commercial resolutions proposed by Summit.

61.    Simply put, Summit demanded that Jet Midwest, and Eastern, make good on the warranty that ESN 906272 was serviceable at the time of the sale from Eastern to Summit.

62.    The Purchase Agreement contains an express written warranty of Eastern as seller, to Summit as buyer, that the engine, ESN 906272, would be serviceable at the time of the sale.

63.    The express warranty of serviceability appears in Section 10 of the Purchase Agreement, as follows (underscoring added):

> THE ENGINE PACKAGE IS BEING SOLD IN ITS THEN "AS IS, WHERE IS" <u>BUT SERVICEABLE CONDITION</u> AND OTHERWISE IN THE DELIVERY CONDITION AND EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT AND IN THE BILL OF SALE DELIVERED PURSUANT TO CLAUSE 5.4 HEREOF, SELLER SHALL NOT BE DEEMED TO HAVE MADE AND HEREBY DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, NOW OR HEREAFTER, AS TO (a) THE AIRWORTHINESS, CONDITION, DESCRIPTION, VALUE, DURABILITY, MANUFACTURE, OPERATION, DESIGN, QUALITY OR CAPACITY OF THIS AGREEMENT, THE ENGINE, THE ENGINE DOCUMENTS, OR ANY PART THEREOF, (b) THE TITLE, VALUE, MERCHANTABILITY OR FITNESS FOR USE OF THE ENGINE PACKAGE, ENGINE DOCUMENTS, OR ANY PART THEREOF....

64.    The Purchase Agreement was intentionally structured such that:  (a) serviceability was <u>not</u> a delivery condition that would be either accepted or released by delivery of the

15

Copy from re:SearchTX

Acceptance Certificate at closing, and (b) serviceability of the engine was a warranty of Eastern

as the seller that would survive the closing. To that end, in Section 12 of the Purchase Agreement,

Eastern and Summit agreed that "[a]ll representations, warranties and indemnities made herein and

the agreements set forth in this Agreement shall survive the Closing."

65.    The "Delivery Condition" stated in the Purchase Agreement pertained to Summit's

obligation to purchase the engine on or prior to the closing date. Specifically, under Section 8 of

the Purchase Agreement, "[t]he obligation of Buyer to purchase the Engine Package pursuant to

this Agreement is subject to fulfilment on or prior to the Closing Date of the following [nine]

conditions, any one or more of which may be waived by it . . . ." Among the nine conditions

precedent stated in Section 8 is Section 8.8, which provides, "The Engine shall, at the time of

Closing, conform to the condition as described in Schedule 1 hereto and the Delivery Condition."

"Delivery Condition" is a defined term in the Purchase Agreement meaning "the minimum

delivery conditions for the Engine at Delivery as set out in Schedule 3 hereto." Schedule 3 of the

Purchase Agreement lists six enumerated delivery conditions, serviceability not being one of them.

66.    At closing, Summit as buyer signed and delivered to Eastern as seller an

"Acceptance Certificate" (the form of which appeared in Exhibit A to the Purchase Agreement).

In the Acceptance Certificate, Summit acknowledged the time and place of delivery of the engine,

and that Eastern delivered and Summit accepted delivery of the "Engine Package" (meaning the

engine and the associated engine documents). Further, Summer "unconditionally and irrevocably

acknowledge[d] and agree[d] that the Engine Package [was] acceptable to Buyer without exception

as of the date [t]hereof subject to the terms and conditions of the Purchase Agreement."

67.    Because serviceability of the engine was not a delivery condition under the

Purchase Agreement, Summit did not, merely by signing the Acceptance Certificate, accept the

4894-4421-0812

Copy from re:SearchTX

engine in its then current "as is, where is" condition without regard to serviceability, and the Acceptance Certificate was not intended as and cannot be construed as a either (a) an acceptance that the engine was serviceable when in fact it was not, or (b) a release of a delivery condition regarding serviceability because no such delivery condition was agreed in the Purchase Agreement.

68.    Summit did not, merely by signing the Acceptance Certificate, in any way waive or release the express warranty of serviceability made by Eastern in Section 10 of the Purchase Agreement.

69.    One of the reasons that the Purchase Agreement was structured with serviceability being a warranty of Seller that would survive closing, rather than a delivery condition that would be either accepted or waived at closing, was that Summit would not be inspecting the engine immediately prior to the closing and would be in no position to make any determination of serviceability at that time.  Serviceability would only be tested later, either in an inspection by an intended operator (as happened) or when an operator attempted to put the engine into service.  In the circumstances of this transaction, the express warranty of serviceability was Summit's principal protection, Summit's means of ensuring that it would actually get what it was paying for: a serviceable engine.

70.    When ESN 906272 was determined to be unserviceable, Summit demanded that Jet Midwest and Eastern make good on the express warranty of serviceability.

71.    Jet Midwest and Eastern alike failed and refused to make good on the express warranty of serviceability.

4894-4421-0812

Copy from re:SearchTX

72.    While discussions involving Summit, Jet Midwest, and Eastern and how to resolve the problem with the unserviceable engine dragged on for months, ESN 906272 remained in storage at Istanbul airport.

73.    In mid-August 2023, Summit arranged to have ESN 906272 transported to and inducted into a maintenance facility in Hannover, Germany, to rectify the discrepancies discovered by Turkish Technic during the inspect on April 8, 2023.

74.    The initial estimate for the maintenance work to rectify the unserviceable condition of ESN 906272 is $2,150,000.  The actual cost of rectification work will not be determined until the shop visit is complete and the engine is restored to serviceable condition.

75.    The initial estimate of time to complete the rectification work at the shop in Hannover, Germany, is four to five months, with the final total down time possibly extending longer than that.

**E.    Summit realizes Eastern and Jet Midwest misrepresented the condition of the engine.**

76.    When Jet Midwest provided to Summit the February 27, 2021 borescope inspection report, which found ESN 906272 serviceable, Jet Midwest represented the report as the product of a full video borescope inspection carried out in accordance with the AMM, and Jet Midwest represented the report as a fair, accurate, and complete report on the physical condition of the engine.

77.    In reality, either the February 27, 2021 borescope inspection report or the inspection itself was incomplete or conducted erroneously.

78.    Specifically, the report or the inspection suffered the following shortcomings:  (A) the report represented the "[n]o significant discrepancies" were found in the leading edges of the blades in the High Pressure Compressor Stage 3, when in fact the leading edge of at least one blade

18

Copy from re:SearchTX

in the High Pressure Compressor Stage 3 had a dent measured 0.004 inch deep at the airfoil root radius area, which was beyond allowable limits per the AMM and thus rendered the engine unserviceable; and (B) the report contained no adverse findings as to the condition of the High Pressure Turbine Stage 2 shrouds, when in fact a number of shrouds in the High Pressure Turbine Stage 2 had circumferential cracks, which were beyond allowable limits per the AMM and thus rendered the engine unserviceable.

79.     More generally, the February 27, 2021 borescope inspection report found the engine serviceable, when the Turkish Technic borescope inspection report found the engine in fact unserviceable. (The engine was in storage in the desert and not operated during the period between those two borescope inspections, so the condition of the engine would not have materially changed during that interval.)

80.     In the Purchase Agreement itself, Eastern represented that the "Engine has recently undergone a full video borescope inspection of all accessible paths per the latest revision of the AMM at Seller's cost."

81.     That representation by Eastern referred to the borescope inspection conducted for Jet Midwest on February 27, 2021.

82.     That representation by Eastern was false. The engine had not, in fact, undergone a *full* video borescope inspection of *all accessible paths* per the latest revision of the AMM.

83.     Again when Eastern tendered the engine to Summit in connection with the closing, Eastern in effect made the same representation about the borescope inspection, which representation was not true.

4894-4421-0812

Copy from re:SearchTX

84.     The falsity of Eastern's representation to Summit about the borescope inspection was not known to Summit at the time of closing and was discovered only later when the results of the Turkish Technic borescope inspection were brought to Summit's attention.

85.     As facilitator of the Purchase Agreement transaction on behalf of Eastern, Jet Midwest participated in and joined in making Eastern's misrepresentations to Summit regarding the borescope inspection.

## VI.    CLAIMS

### A.    Breach of Express Warranty (against Eastern)

86.     Summit realleges and incorporates by reference the foregoing paragraphs.

87.     Eastern has breached the express warranty Eastern made in the Purchase Agreement warranting that ESN 906272 was and would be in serviceable condition at the time of the sale.

88.     ESN 906272 was not, in fact, serviceable at the time of the sale.

89.     Summit demanded that Eastern make good on its express warranty of serviceability.

90.     Eastern has failed and refused to make good on its warranty of serviceability.

91.     As a result of Eastern's breach of its warranty of serviceability as to ESN 906272, Summit has suffered damages, including the following:

    a.      approximately $350,000 in wasted shipping, storage, and related costs incurred by Summit to transport ESN 906272 from Mojave, California, to Istanbul, Turkey, to store the engine in Turkey, and to transport the engine to Hannover, Germany, for the shop visit to rectify the unserviceable condition of the engine;

    b.      an estimated $2,150,000 in costs for the shop visit to restore the engine to serviceable condition; and

4894-4421-0812

Copy from re:SearchTX

c.      an estimated $150,000 per month in loss of use value and loss of rental income during the entire period from the closing through the present and continuing into the future until the engine is restored to serviceable condition, a time presently estimated to last at least ten months in all.

92.      Eastern is liable to Summit for the damages set forth above for Eastern's breach of contract for its failure to make good on the warranty of serviceability of ESN 906272.

### B.      Negligent Misrepresentation

93.      Summit realleges and incorporates by reference the foregoing paragraphs.

94.      On or around December 1, 2022, Jet Midwest misrepresented to Summit that the borescope inspection report dated February 27, 2021, was the product of a full video borescope inspection carried out in accordance with the AMM, when it fact it was not.

95.      On or around December 1, 2022, Jet Midwest misrepresented to Summit that the borescope inspection report dated February 27, 2021, was a fair, accurate, and complete report on the physical condition of the engine, when in fact it was not.

96.      In the Purchase Agreement reached on March 6, 2023, Eastern misrepresented to Summit that the borescope inspection report dated February 27, 2021, was the product of a full video borescope inspection carried out in accordance with the AMM, when it fact it was not.

97.      Jet Midwest negligently counseled, advised, or caused Eastern to make the misrepresentations Eastern made in the Purchase Agreement, and so is jointly and severally liable to Summit with Eastern for Jet Midwest's misrepresentations.

98.      The misrepresentations made by Jet Midwest and Eastern to Summit were made in the course of Jet Midwest's and Eastern's business, or in a transaction in which Jet Midwest and/or Eastern had a pecuniary interest.

4894-4421-0812

Copy from re:SearchTX

99.     In making their misrepresentations to Summit, Jet Midwest and Eastern supplied false information for the guidance of Summit in Summit's business.

100.    In making their misrepresentations to Summit, Jet Midwest and Eastern did not exercise reasonable care or competence in obtaining or communicating information about the borescope inspection or the report on the borescope inspection.

101.    Summit justifiably and reasonably under the circumstances relied to its detriment on the misrepresentations made by Jet Midwest and Eastern.

102.    Summit suffered pecuniary losses as a result of relying on the negligent misrepresentations of Jet Midwest and Eastern.

103.    Summit is entitled to recover damages from Jet Midwest and Eastern to make Summit whole for the pecuniary losses suffered as a result of relying on the misrepresentations of Jet Midwest and Eastern.

## VII.    CONDITIONS PRECEDENT

104.    Pursuant to Rule 54 of the Texas Rules of Civil Procedure, Summit alleges that all conditions precedent have been performed or have occurred.

## VIII.    ATTORNEYS' FEES (AGAINST EASTERN)

105.    Summit hereby realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

106.    Under Section 38.001(b)(8) of the Texas Civil Practice and Remedies Code, Summit seeks to recover its reasonable attorney's fees for its breach-of-warranty claims against Eastern.

4894-4421-0812

Copy from re:SearchTX

## IX.    JURY DEMAND

107.    Pursuant to Rule 217 of the Texas Rules of Civil Procedure, Summit requests a jury trial on all issues triable by jury.  Accordingly, Summit will tender the jury fee to the Clerk of the Court.

## X.    PRAYER

WHEREFORE, PREMISES CONSIDERED, for all of the reasons set forth above in this Petition, Summit requests respectfully that, upon final trial or other disposition of this lawsuit, Summit have and recover judgment against Eastern and Jet Midwest for the following:

a.    the damages resulting from Eastern's breach of the express warranty, and associated reasonable and necessary attorneys' fees;

b.    the damages resulting from Jet Midwest's and Eastern's negligent misrepresentations;

c.    court costs and expenses; and

d.    such other and further relief as may be just and proper under the circumstances.

Dated:        August 29, 2023

Respectfully submitted,

SCOTT DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Phone: 512.495.6300
Fax: 512.495.6399

By _____
     Casey L. Dobson
     State Bar No.  05927600
     cdobson@scottdoug.com
     Sara W. Clark
     State Bar No. 00794847
     sclark@scottdoug.com

23

4894-4421-0812

Copy from re:SearchTX

*and*

SMITH, GAMBRELL & RUSSELL, LLP
500 West 2nd Street, Suite 1900
Austin, Texas 78701
Phone: 512.498.7617
Fax: 512.879.5032


By _____
      Peter B. Barlow
      State Bar No. 24098860
      pbarlow@sgrlaw.com

**ATTORNEYS FOR SUMMIT SKY ADVISORY**

4894-4421-0812

24

Copy from re:SearchTX

### Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angie Espinoza on behalf of Casey Dobson
Bar No. 05927600
aespinoza@scottdoug.com
Envelope ID: 79033604
Filing Code Description: ORIGINAL PETITION/APPLICATION - (OCA)
Filing Description: PLAINTIFF'S ORIGINAL PETITION
Status as of 8/30/2023 9:21 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Casey LDobson | | cdobson@scottdoug.com | 8/29/2023 2:56:57 PM | SENT |
| Sara WClark | | sclark@scottdoug.com | 8/29/2023 2:56:57 PM | SENT |
| Angie Espinoza | | aespinoza@scottdoug.com | 8/29/2023 2:56:57 PM | SENT |
| Susie Smith | | ssmith@scottdoug.com | 8/29/2023 2:56:57 PM | SENT |
| Peter Barlow | 24098860 | pbarlow@sgrlaw.com | 8/29/2023 2:56:57 PM | SENT |

Copy from re:SearchTX

10/19/2023 4:45 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-23-004790
Susan Schmidt

## CAUSE NO. D-1-GN-23-004790

| | | |
|---|---|---|
| **SUMMIT SKY ADVISORY, LLC** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | |
| | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **EASTERN AIRLINES, LLC, and** | § | |
| **JET MIDWEST, INC.** | § | **201ST DISTRICT COURT** |

### DEFENDANT'S ORIGINAL ANSWER

Defendant Jet Midwest, Inc. ("Jet MidWest") files this Original Answer in response to Plaintiff Summit Sky Advisory, LLC's Original Petition and would respectfully show the Court as follows:

### GENERAL DENIAL

Defendant generally denies all allegations contained in said pleadings and demands strict proof in accordance with the law.

### AFFIRMATIVE DEFENSES

Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Jet MidWest asserts the following affirmative defenses:

1. Pursuant to a signed Acceptance Certificate, Plaintiff, as Buyer, unconditionally and irrevocably acknowledged and agreed that the engine in question was acceptable to Buyer without exception.

2. Pursuant to the Purchase Agreement, Buyer acknowledged and agreed that it had conducted or waived an inspection of the engine to its satisfaction. Accordingly, Buyer was not relying upon any representations of Defendant with respect to engine condition.

Copy from re:SearchTX

3.  Pursuant to the Purchase Agreement, Buyer accepted the engine in its "as-is, where is" condition with a disclaimer of warranties of airworthiness, condition, description, durability, operation, and quality.

4.  At time of delivery to Buyer, the engine was serviceable. Any alleged defects in the engine are not attributable to Jet MidWest, but were solely caused by persons or entities not under Jet MidWest's control. Any alleged defects or conditions identified in the petition were caused by or attributable to Summit Sky Advisory or persons under their direction and control after it had taken possession of the engine, separated the fan and propulsor, shipped the engine to Istanbul, and conducted additional testing.

5.  Actions of Jet MidWest were not the proximate or actual cause of Summit Sky's damages, if any.

WHEREFORE, Defendant prays that upon final trial, Plaintiff's request for relief be  in all things denied and Defendant be granted such other relief to which it may be entitled.

Respectfully submitted,

**DUGGINS WREN MANN & ROMERO, LLP**
600 Congress Avenue, Suite 1900
Austin, Texas 78701
T: 512.744.9300 | F: 512.744.9399

By: _____
Jo Ann Merica
SBN: 13952400
jmerica@dwmrlaw.com

*Attorney for Defendant Jet Midwest, Inc.*

Copy from re:SearchTX

**Certificate of Service**

I certify that on the 19th day of October, 2023, a true and correct copy of the foregoing was served in accordance with the Texas Rules of Civil Procedure on the persons listed below:

Casey L. Dobson
Sara W. Clark
SCOTT DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
cdobson@scottdoug.com
sclark@scottdoug.com

Peter B. Barlow
SMITH, GAMBRELL & RUSSELL, LLP
500 West 2nd Street, Suite 1900
Austin, Texas 78701
pbarlow@sgrlaw.com


Jo Ann Merica

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pat Holcomb on behalf of Jo Merica
Bar No. 13952400
pholcomb@dwmrlaw.com
Envelope ID: 80787192
Filing Code Description: Answer/Response
Filing Description: DEFENDANT'S ORIGINAL ANSWER
Status as of 10/21/2023 3:23 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Casey LDobson | | cdobson@scottdoug.com | 10/19/2023 4:45:38 PM | SENT |
| Phuc Phan | | pphan@scottdoug.com | 10/19/2023 4:45:38 PM | SENT |
| Sara WClark | | sclark@scottdoug.com | 10/19/2023 4:45:38 PM | SENT |
| Peter Barlow | 24098860 | pbarlow@sgrlaw.com | 10/19/2023 4:45:38 PM | SENT |
| Angie Espinoza | | aespinoza@scottdoug.com | 10/19/2023 4:45:38 PM | SENT |
| Susie Smith | | ssmith@scottdoug.com | 10/19/2023 4:45:38 PM | SENT |
| Jo Ann Merica | | jmerica@dwmrlaw.com | 10/19/2023 4:45:38 PM | SENT |

9/8/2023 12:07 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-23-004790
Norma Ybarra

C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-23-004790**

SUMMIT SKY ADVISORY, LLC

, PLAINTIFF(S)

vs.

EASTERN AIRLINES, LLC; JET MIDWEST, INC.

, DEFENDANT(S)

TO:    **JET MIDWEST, INC.**
       **BY SERVING ITS REGISTERED AGENT**
       **CT CORPORATION SYSTEM**
       **120 S CENTRAL AVE**
       **CLAYTON MO  63105**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFF S ORIGINAL PETITION** in the above styled and numbered cause, which was filed on **August 29, 2023** in the **201st District Court** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office. **August 30, 2023**

REQUESTED BY:
**Dobson, Casey Legate**
**303 COLORADO STREET, SUITE 2400**
**Austin, TX  78701**

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Rosa Oneal, Deputy**

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock _____M., and executed at
_____ within the County of _____ on the _____ day
of _____, _____, at _____ o'clock _____M., by delivering to the within named
_____, each in person, a true copy of this citation together with
the **PLAINTIFF S ORIGINAL PETITION** accompanying pleading, having first attached such copy of such citation to such copy of
pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

_____
Notary Public, THE STATE OF TEXAS
**D-1-GN-23-004790**

Sheriff / Constable / Authorized Person

By:_____

Printed Name of Server

**SERVICE FEE NOT PAID**

Copy from re:SearchTX

# AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| **State of Texas** | **County of Travis** | **201st Judicial District Court** |

Case Number: D-1-GN-23-004790

Plaintiff: **Summit Sky Advisory, LLC**

vs.

Defendant: **Eastern Airlines, LLC, and Jet Midwest, Inc.**

For: Scott, Douglass & McConnico, LLP

Received by _Morthin Henckel_ on the 31st day of August, 2023 at 2:13 pm to be served on **Jet Midwest, Inc. by serving its Registered Agent,** CT Corporation System, 120 S Central Ave., Clayton, St. Louis County, MO 63105. I, _Martha Henckel_, being duly sworn, depose and say that on the _1_ day of _September_, 2023 at _11:46_ m., executed service by delivering a true copy of the **Citation and Plaintiff's Original Petition with Lawyer Referral** in accordance with state statutes in the manner marked below:

[X] **CORPORATE SERVICE:** By delivering a true copy of the listed documents with the date of service endorsed thereon by me, to: _Beanulove ; CT Corporation_ as _Registered Agent_ at _110 S. Central Ave., Clayton, MO 65105_, _____ County, and informed said person of the contents therein, in compliance with state statutes.

( ) **NON SERVICE:** For the reason detailed in the comments below.

**COMMENTS:**

I certify that I am over the age of 18, of sound mind, have no interest in the above action. I delivered the listed documents with the date of service endorsed thereon by me and informed the recipient of the contents therein, in compliance with state statutes. The facts stated in this affidavit are within my personal knowledge and are true and correct.

_Martin Henckel_

Subscribed and Sworn to before me on the _6_ day of _September_ _2023_ by the affiant who is personally known to me.

_____
NOTARY PUBLIC

PROCESS SERVER # _537_
EXPIRATION DATE: _July 2024_
Appointed in accordance with State Statutes

**Austin Process LLC**
**809 Nueces**
**Austin, TX 78701**
**(512) 480-8071**

Our Job Serial Number: 2023008909
Ref: Summit v. Eastern Airlines & Jet Midwest

NICK ZOTTI
Notary Public - Notary Seal
STATE OF MISSOURI
St. Charles County
My Commission Expires: Mar. 14, 2025
Commission #13460023

Copyright © 1992-2023 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2s

Copy from re:SearchTX

CAUSE NO. D-1-GN-23-004790

| | | |
|---|---|---|
| **SUMMIT SKY ADVISORY, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **TRAVIS COUNTY, TEXAS** |
| | § | |
| **EASTERN AIRLINES, LLC, and JET MIDWIST, INC.,** | § | |
| | § | |
| *Defendants.* | § | **201ST JUDICIAL DISTRICT COURT** |

**DEFENDANT EASTERN AIRLINES LLC'S
AMENDED ANSWER, SPECIAL EXCEPTIONS, AND
OBJECTION TO JURY DEMAND**

COMES NOW Defendant Eastern Airlines LLC ("**Eastern**") in the above-numbered and captioned cause and timely files this Original Answer and Special Exceptions to the Original Petition of Plaintiff Summit Sky Advisory, LLC ("**Plaintiff**" or "**Summit**"), and in support thereof would respectfully show as follows:

**I.
GENERAL DENIAL**

1.      Pursuant to Texas Rule of Civil Procedure 92, Eastern generally denies each and every material allegation contained in Plaintiff's Original Petition (including any subsequent amendments or supplementations thereto by Plaintiff) (collectively, the "**Petition**") and demands strict proof thereof.

**II.
ADDITIONAL DEFENSES, AFFIRMATIVE DEFENSES, AND
LIMITATIONS ON RECOVERY**

2.      Pleading further or in the alternative, Plaintiff has failed to satisfy all conditions precedent to asserting the claim(s) it makes in this action.  Eastern

specifically denies that Plaintiff has presented to Eastern or to a duly authorized agent of Eastern its claims concerning the terms of or the parties' respective obligations under the contract on which Plaintiff bases its claims.

3.    Pleading further or in the alternative, Plaintiff's claims are barred, in whole or in part, by the doctrines of doctrines of waiver, laches, acquiescence, estoppel and/or ratification.

4.    Pleading further or in the alternative pursuant to Tex. R. Civ. P. 94, Plaintiff's claims are barred, in whole or in part, by the terms of its written agreement with Eastern, including but not limited to those terms under which Plaintiff unconditionally and irrevocably acknowledged and agreed that the aircraft engine on which it bases its claims was acceptable to Plaintiff without exception.

5.    Pleading further or in the alternative pursuant to Tex. R. Civ. P. 94, Plaintiff's claims are barred in whole or in part by its failure to mitigate damages.

6.    Pleading further or in the alternative pursuant to Tex. R. Civ. P. 94, Plaintiff's claims are barred, in whole or in part, because Plaintiff acknowledged and agreed under the contract on which it bases its claims that it had conducted a sufficient or waived inspection of the goods it purchased from Eastern to Plaintiff's satisfaction, and therefore could not have reasonably or justifiably relied upon any representation of or on behalf of Eastern or on any material omissions that Eastern had a duty to disclose with respect to the condition of the goods Plaintiff purchased.

7.    Pleading further or in the alternative pursuant to Tex. R. Civ. P. 94, Plaintiff's claims are barred in whole or in part by its acceptance of the goods it purchased from Eastern on an "as-is, where is" basis with a valid and binding disclaimer

of warranties of airworthiness, condition, description, durability, operation, and quality.

8.    Pleading further or in the alternative, Plaintiff's claims are barred in whole or in part because, at the time of delivery to Plaintiff, the goods on which it bases its claims (i.e., the aircraft engine) were serviceable and no alleged defects are attributable to Eastern but (if any defects) were solely caused by third parties not under and beyond Eastern's control—specifically those third parties who or that under Plaintiff's direction and control took possession of the engine, separated the fan and propulsor, transported the engine to Istanbul, Turkey, and conducted additional testing.

9.    Pleading further or in the alternative, Plaintiff's claims are barred, in whole or in part, because the actions of Eastern were not the proximate or actual cause of Plaintiff's damages, if any.

10.    Plaintiffs' claims are barred, in whole or in part, by the doctrines of proportionate responsibility, comparative responsibility, and contributory negligence under Tex. Civ. Prac. & Rem. Code § 33.001, *et seq.*, because Plaintiff, others, and/or responsible third parties caused or contributed to Plaintiff's alleged damages and the damages claimed by Plaintiff against Eastern are subject to reduction based on the percentage of responsibility attributable to Plaintiff, others, and/or any responsible third party.

11.    Eastern further relies upon its rights in the event the evidence shows any spoliation of evidence by Plaintiff.

12.    Pleading further or in the alternative, Eastern hereby gives notice that it intends to rely upon such other additional and/or affirmative defenses that may be revealed by further investigation and/or discovery and reserves the right to plead any

such additional defenses.

13.    By the foregoing additional defenses, affirmative defenses, or limitations on recovery, Eastern does not assume the burden of proving or disproving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff or any other party, nor does Eastern admit any of allegations of Plaintiff or any other party subsequently joined in this suit or designated as a responsible third party.

### III.
### SPECIAL EXCEPTIONS

14.    To the extent that Plaintiff seeks monetary damages against Eastern in this action, Eastern specially excepts to the entirety of the Petition to the extent that it fails to specify the applicable range and/or the maximum amount of monetary damages Plaintiff seeks to recover in this suit, pursuant to TEX. R. CIV. P. 47.

### IV.
### ATTORNEYS' FEES AND COSTS

15.    To the extent that Eastern is entitled to an award of attorneys' fees and costs under any contract or agreement, under Chapter 38 of the Texas Civil Practice and Remedies Code, or under other law, Eastern hereby seeks recover of the costs and attorneys' fees that it reasonably and necessarily incurs in or related to this action.

### V.
### OBJECTION TO AND MOTION TO STRIKE JURY DEMAND

16.    Eastern objects to and moves to strike Plaintiff's jury demand.

17.    Pursuant to Section 18.1.3 of the written agreement on which Plaintiff bases its claims, the parties irrevocably and enforceably waived any right to a trial by jury in any judicial proceeding involving, directly or indirectly, any matter arising out of or relating to that agreement.  A right to a jury trial may be waived and a party may object

and/or move to strike a jury demand at any time based, as here, on a contractual waiver of a right to a jury trial.  Eastern accordingly so objects and promptly moves to strike Plaintiff's jury demand.

## VI.
## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendant Eastern Airlines LLC respectfully prays that judgment be entered in its favor and against Plaintiff Summit Sky Advisory, LLC, as follows:

i.    that Plaintiff take nothing by this lawsuit, and that upon final hearing of this case, that all relief sought by Plaintiff be denied;

ii.   that Plaintiff's Petition be dismissed with prejudice;

v.    that Eastern be awarded its costs and attorneys' fees; and

vi.   for all other and further relief, at law or in equity, to which Eastern may show itself to be justly entitled.

Dated:  October 31, 2023   Respectfully submitted,

**MAYNARD NEXSEN PC**

By:_____
   Gregory P. Sapire
   Texas State Bar No. 00791601
   *gsapire@maynardnexsen.com*
   Carlos R. Soltero
   Texas State Bar No. 00791702
   *csoltero@maynardnexsen.com*

2500 Bee Caves Road
Building 1, Suite 150
Austin, Texas 78746
(512) 969-6540 Telephone
(512) 359-7996 Facsimile

   Elizabeth S. Pilcher
   Texas State Bar No.  24127073
   epilcher@maynardnexsen.com

1901 6th Ave. N.
Suite 1700
Birmingham, AL 35203-2629
(205) 254-1023 Telephone
(205) 254-1999 Facsimile

**ATTORNEYS FOR DEFENDANT
EASTERN AIRLINES, LLC**

**OF COUNSEL:**

Amanda J. Brookhyser
ZUMPANO PATRICIOS POPOK & HELSTEN
abrookhyser@zplaw.com
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
(702) 583-3326 Telephone
(801) 401-7228 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this document was served upon all counsel of record in the manner indicated below on October 31, 2023.

| | |
|---|---|
| Casey L. Dobson<br>Sara W. Clark<br>SCOTT DOUGLASS & MCCONNICO, LLP<br>303 Colorado St., Ste. 2400<br>Austin, TX 78701<br>(512) 495-6300 (telephone)<br>(512) 495-6399 (facsimile)<br>cdobson@scottdoug.com<br>sclark@scottdoug.com<br><br>*Counsel for Plaintiff*<br>*Summit Sky Advisory, LLC* | ☒ **<u>via Electronic Service (electronic filing manager)</u>**<br>via Certified Mail, RRR<br>via U.S. Mail (First Class)<br>via Federal Express<br>via Facsimile<br>☒ **<u>via E-mail</u>**<br>via Hand Delivery |
| Peter B. Barlow<br>SMITH, GAMBRELL & RUSSELL, LLP<br>500 West 2nd St., Suite 1900<br>Austin, TX 78701<br>(512) 498-7617 (telephone)<br>(512) 879-5032 (facsimile)<br>pbarlow@sgrlaw.com<br><br>*Counsel for Plaintiff*<br>*Summit Sky Advisory, LLC* | ☒ **<u>via Electronic Service (electronic filing manager)</u>**<br>via Certified Mail, RRR<br>via U.S. Mail (First Class)<br>via Federal Express<br>via Facsimile<br>☒ **<u>via E-mail</u>**<br>via Hand Delivery |
| Jo Ann Merica<br>DUGGINS WREN MANN & ROMERO, LLP<br>600 Congress Ave., Suite 1900<br>Austin, TX 78701<br>(512) 744-9300 (telephone)<br>(512) 744-9399 (facsimile)<br>jmerica@dwmrlaw.com<br><br>*Counsel for Defendant*<br>*Jet MidWest, Inc.* | ☒ **<u>via Electronic Service (electronic filing manager)</u>**<br>via Certified Mail, RRR<br>via U.S. Mail (First Class)<br>via Federal Express<br>via Facsimile<br>☒ **<u>via E-mail</u>**<br>via Hand Delivery |

*Gregory Sapire*

_____
Gregory P. Sapire

CAUSE NO. D-1-GN-23-004790

| | | |
|---|---|---|
| SUMMIT SKY ADVISORY, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| | § | |
| EASTERN AIRLINES, LLC, and | § | |
| JET MIDWEST, INC. | § | 201ST DISTRICT COURT |

## FIRST AMENDED ANSWER AND SPECIAL EXCEPTION OF JET MIDWEST, INC.

Defendant Jet Midwest, Inc. ("Jet MidWest") files this First Amended Answer and Special Exception in response to Plaintiff Summit Sky Advisory, LLC's Original Petition and would respectfully show the Court as follows:

## I.    GENERAL DENIAL

1.    Defendant generally denies all allegations contained in said pleadings and demands strict proof in accordance with the law.

## II.    ADDITIONAL DEFENSES, AFFIRMATIVE DEFENSES AND LIMITATIONS ON RECOVERY

2.    Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, acquiescence, estoppel and ratification.

3.    Pursuant to a signed Acceptance Certificate, Plaintiff, unconditionally and irrevocably acknowledged and agreed that the engine in question was acceptable to Plaintiff without exception.

4.    Pursuant to the Purchase Agreement, Plaintiff acknowledged and agreed that it had conducted or waived an inspection of the engine to its satisfaction. Accordingly, Plaintiff was not relying upon any representations or failures to disclose of Defendant with respect to engine condition.

1

5.      Pursuant to the Purchase Agreement, Plaintiff accepted the engine in its "as-is, where is" condition with a disclaimer of warranties of airworthiness, condition, description, durability, operation, and quality.

6.      At time of delivery to Plaintiff, the engine was serviceable. Any alleged defects in the engine are not attributable to Jet MidWest, but were solely caused by persons or entities not under Jet MidWest's control. Any alleged defects or conditions identified in the petition were caused by or attributable to Plaintiff or persons under its direction and control after it had taken possession of the engine, separated the fan and propulsor, shipped the engine to Istanbul, and conducted additional testing.

7.      Actions of Jet MidWest were not the proximate or actual cause of Summit Sky's damages, if any.

8.      Plaintiff has failed to mitigate its damages.

9.      Plaintiff has failed to satisfy all conditions precedent to recovery by proper presentment of its claims concerning the contract to Defendant.

10.     Plaintiff's claims are barred, in whole or in part, by the doctrines of proportionate responsibility, comparative responsibility, and contributory negligence under Tex. Civ. Prac. & Rem. Code §33.001, et. Seq., because Plaintiff, others, and/or responsible third parties caused or contributed to Plaintiff's alleged damages and the damages claimed by Plaintiff against Jet MidWest are subject to reduction based on the percentage of responsibility attributable to Plaintiff, others, and/or any responsible third party.

## III.    SPECIAL EXCEPTIONS

11.     Jet MidWest specially excepts to Plaintiff's Original Petition because it fails to specify the applicable range and/or the maximum amount of damages Plaintiff seeks to recover in this suit, as required by Tex. R. Civ. P. 47.

2

## IV.    <u>ATTORNEY'S FEES AND COSTS</u>

12.    To the extent Jet MidWest is entitled to an award of attorney's fees and costs under any contract or agreement or other law, Jet MidWest seeks recovery of its attorney's fees and costs reasonably incurred in or related to this action.

## V.    <u>MOTION TO STRIKE JURY DEMAND</u>

13.    Jet MidWest objects to and moves to strike Plaintiff's jury demand, based on its contractual waiver of a trial by jury. Pursuant to Section 18.1.3 of the written agreement upon which Plaintiff bass its claims, the parties irrevocably and enforceably waived any right to a trial by jury in any judicial proceeding involving, directly or indirectly, any matter arising out of or relating to that agreement.

WHEREFORE, Defendant prays that upon final trial, Plaintiff's requests for relief be  in all things denied; Plaintiff's petition be dismissed with prejudice; and Defendant be granted such other and further relief to which it may be entitled.

Respectfully submitted,

**DUGGINS WREN MANN & ROMERO, LLP**
600 Congress Avenue, Suite 1900
Austin, Texas 78701
T: 512.744.9300 | F: 512.744.9399

By:    _____
Jo Ann Merica
SBN: 13952400
jmerica@dwmrlaw.com

*Attorney for Defendant Jet Midwest, Inc.*

3

### Certificate of Service

I certify that on the 31st day of October, 2023, a true and correct copy of the foregoing was served in accordance with the Texas Rules of Civil Procedure on the persons listed below:

Casey L. Dobson
Sara W. Clark
SCOTT DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
cdobson@scottdoug.com
sclark@scottdoug.com

Peter B. Barlow
SMITH, GAMBRELL & RUSSELL, LLP
500 West 2nd Street, Suite 1900
Austin, Texas 78701
pbarlow@sgrlaw.com

Gregory P. Sapire
Carlos R. Soltero
Elizabeth S. Pilcher
Maynard Nexsen PC
2500 Bee Caves Road
Building 1, Suite 150
Austin, Texas 78746
gsapire@maynardnexsen.com
csoltero@maynardnexsen.com
epilcher@maynardnexsen.com

Jo Ann Merica

Case Summary

## Case No. D-1-GN-23-004790

| | | |
|---|---|---|
| **SUMMIT SKY ADVISORY, LLC** | ) | Location:  Travis County Dist. Clerk |
| | ) | Judge:  201st District Court |
| v. | ) | Filed on: 08/29/2023 |
| | ) | |
| | ) | |
| **EASTERN AIRLINES, LLC and** | ) | |
| **JET MIDWEST, INC.** | ) | |
| | ) | |

---

Case Information

---

Case Type:    Debt/Contract – Debt
Collection
Case Status: 08/29/2023 Pending

---

Party Information

---

*Lead Attorneys*

**Plaintiff**      **Summit Sky Advisory, LLC**      **Dobson, Casey L.**
*Retained*

**Defendant   Eastern Airlines, LLC**      **Sapire, Gregory P.**
*Retained*

**Defendant   Jet Midwest, Inc.**      **Merica, Jo Ann**
*Retained*

---

Case Events

---

08/29/2023   OPN: CV ORIGINAL PETITION

08/29/2023   E-Filed Petition
             *PLAINTIFF'S ORIGINAL PETITION*

09/08/2023   EXECUTED SERVICE
             *Executed Citation – Jet Midwest, Inc.*

09/28/2023   OTHER – NOTICE
             *Process Request Form Citation – Eastern Airlines, LLC SOS*

10/19/2023   ANSWER
             *Defendant's Original Answer*

10/30/2023   ANSWER
             *Defendant Eastern Airlines, LLC's Original Answer and Special
             Exceptions*

10/31/2023   AMENDED ANSWER
             *Defendant Eastern Airlines, LLC's Amended Answer, Special Exceptions
             & Objection to Jury Demand*

10/31/2023   AMENDED ANSWER
             *Defendant Jet Midwest, Inc.'s First Amended Answer and Special
             Exception*