IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SUMMIT SKY ADVISORY, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:23-CV-1332-RP |
| EASTERN AIRLINES, LLC and JET MIDWEST, INC., | § § § § | |
| Defendants. | § § | |

### ORDER

Before the Court is Plaintiff Summit Sky Advisory, LLC's ("Plaintiff") motion for leave to file its first amended complaint, (Dkt. 36). Defendant Eastern Airlines, LLC ("Eastern") filed a response, (Dkt. 38), to which Plaintiff replied, (Dkt. 40).[1] Having reviewed the record, the parties' briefing, and the relevant law, the Court will grant the motion.

### I. BACKGROUND

This case arises from the sale of a FE-90-11B jet engine for $6.3 million by Eastern to Plaintiff in a transaction facilitated by Jet Midwest. (Dkt. 36, at 3–4). Plaintiff, having originally brought negligent misrepresentation and breach-of-warranty claims, now seeks to add a fraud claim. Plaintiff argues that the deal included a term of "serviceability," meaning it was agreed that the equipment would be provided in a condition to immediately enter service consistent with its safety parameters. (*Id.* at 4). Plaintiff alleges that throughout the transaction, both Eastern and Jet Midwest represented that the engine was serviceable. For instance, Plaintiff alleges that Defendants provided a borescope inspection report from 2021 which showed that the engine was serviceable, and that Defendants represented the 2021 inspection was the most recent one. (*Id.* at 5). After Plaintiff

---

[1] Defendant Jet Midwest, Inc. ("Jet Midwest") did not file a response, and the Court considers it unopposed to this motion as a result.

purchased the engine in March 2023, however, one of its customers did its own borescope inspection of the engine and found it unserviceable. (*Id.* at 6). Because the engine was not serviceable and required repairs costing about $4 million, Plaintiff brought a breach-of-warranty claim against Eastern and a negligent-representation claim against Jet Midwest. (*Id.*).

The deadline to file motions to amend the pleadings or join additional parties was February 23, 2024, in the original scheduling order, which fell shortly after the beginning of discovery. (Dkt. 15, at 2). Later in discovery, in July 2024, Plaintiff obtained a new borescope report of which it was previously unaware, and which constitutes the basis for its new fraud claim. (Dkt. 36, at 2–3). More specifically, Plaintiff learned that in January 2023, an inspector from a different potential buyer had prepared a borescope report finding the engine unserviceable. (*Id.* at 7). Eastern produced the report in July 2024. (*Id.* at 9). Through a non-party subpoena, Plaintiff also obtained documents which, according to Plaintiff, demonstrate Defendants were aware of the latest borescope report but nevertheless proceeded with representing that the engine was serviceable. (*Id.* at 8–9). On the basis that the borescope report was known to Defendants and that they made specific false statements with the intent to cause Plaintiff to buy the engine regardless of its unserviceable condition, Plaintiff now moves for leave to amend its complaint to add a fraud claim.

## II. LEGAL STANDARD

### A. Scheduling Order

A scheduling order may "be modified only for good cause." Fed. R. Civ. P. 16(b)(4). There are four relevant factors to consider when determining whether there is good cause under Rule 16(b)(4): "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Springboards To Educ., Inc. v. Houston Indep. Sch.*

*Dist.*, 912 F.3d 805, 819 (5th Cir. 2019), *as revised* (Jan. 29, 2019), *as revised* (Feb. 14, 2019). A party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

### B.  Leave to Amend

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a matter of course," either within 21 days of service or 21 days after a responsive pleading or Rule 12 motion, but afterwards "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (internal quotation marks and citations omitted). But leave to amend "is by no means automatic." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991). A district court may deny leave to amend if it has a "substantial reason" to do so. *Lyn–Lea Travel Corp.*, 283 F.3d at 286. The futility of amendment is one such substantial reason to deny leave to amend. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). A proposed amendment is futile if it fails to state a claim upon which relief could be granted. *Id.* at 873. Therefore, in determining futility, this Court will apply the "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

### III. DISCUSSION

Plaintiff's motion raises two related issues: (1) whether good cause exists to grant a modification of the scheduling order, and (2) whether an amended complaint would be futile. *See Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) ("If a party shows good cause for missing the deadline [under Rule 16], then the more liberal standard of Rule 15(a) will apply to the

district court's denial of leave to amend."). Here, the Court finds that good cause exists, and that the amendment is not futile as a matter of law.

## A. Good Cause Exists

Plaintiff has met the four-part test to establish good cause. *Springboards*, 912 F.3d at 819. To the first factor, the sufficiency of an explanation for the late filing, not having discovered the basis for a claim until after the scheduling order deadline has passed can constitute a sufficient explanation for missing the amended pleadings deadline. *See, e.g., Marbot v. Pho Chateau Dallas LP*, No. 3:14-CV-1339-M, 2015 WL 13469922, at *1 (N.D. Tex. Sept. 18, 2015) ("There is good cause to allow Plaintiff's amendment. Plaintiff has explained that he missed the amendment deadline because, due to discovery disputes, he did not discover the basis for the amendment until after the deadline."); *H&R Block Tax Servs., Inc. v. Jackson Hewitt Tax Serv., Inc.*, No. 6:08CV37, 2008 WL 11265109, at *3 (E.D. Tex. Dec. 23, 2008). Plaintiff has explained the failure to timely amend by detailing the new evidence supporting its additional claim, when they obtained it, and how that evidence was unavailable before the scheduling order's deadline to amend pleadings, satisfying the first *Springboards* factor. 912 F.3d at 819; *see Strong v. Marathon Resource Mgmt. Group, LLC*, 2019 WL 4696418, *2, Case 1:18-cv-634-RP (W.D. Tex. 2019).

Plaintiff has adequately explained why it could not timely comply with the amended pleadings deadline. The new claim concerns allegations of fraud, the basis for which (the 2023 inspection report) was not disclosed until months after the amended pleadings deadline. (Dkt. 36, at 12). Once Plaintiff became aware of the report in July 2024 and the subsequent documents it obtained from a subpoena in August 2024, Plaintiff says it took appropriate time to evaluate its implications, prepare a revised complaint, and then seek Defendants' consent or opposition to the amendment before filing the instant motion in September 2024. (*Id.* at 8, 12). Because this motion

proceeded at a reasonable rate, there is no reason to believe that Plaintiff unduly delayed in attempting to timely amend its complaint.

Second, the modification is important to Plaintiff's case. Plaintiff argues that the fraud claim has different elements and remedies than its other claims and will be an important part of the context and narrative of the case at trial. (Dkt. 36, at 13). Eastern does not raise any points opposing the importance of the fraud claim to Plaintiff's case.

Third, any potential prejudice to the late filing of the amended complaint to Eastern is minimal. Discovery closes December 20, 2024, meaning it was ongoing at the time of filing of the instant motion, with over three months left, and is still ongoing at the time of this Order. (Dkt. 36, at 13–14). Plaintiff does not request a change to the scheduling order. (*Id.* at 14). Eastern argues that the existence of depositions that have already been scheduled at the time of the proposed amendment creates prejudice, (Dkt. 38, at 2), but Plaintiff argues that the depositions were upcoming at the time of filing and the relevant witnesses do not need to be re-deposed if the complaint is amended, (Dkt. 36, at 14). Moreover, the Court disagrees that the existence of scheduled depositions causes prejudice to Eastern; the parties are free to address issues relevant to the fraud claim at the depositions, and conducting any follow-up discovery requests related to the amendment would not create undue prejudice given the time left before the close of discovery on December 20, 2024. The Court also declines to find that the late-filed amended complaint creates prejudice to Eastern because the lateness apparently stems at least in part due to their late-filed disclosures. (Dkt. 36, at 2).

Finally, as to the fourth factor (availability of a continuance to cure any prejudice), if further discovery or litigation results from the amendment, the Court may consider a continuance of trial or an extension of the close of discovery for the parties at a later date. The parties have over five

5

months between the close of discovery and the current trial setting date of June 30, 2025. (*Id.* at 15). Some resulting delay to completing discovery, if it occurs, may be mildly prejudicial to Eastern but does not outweigh the substantial prejudice of barring Plaintiff's fraud claim in its entirety.

The Court finds that good cause exists to grant the modification, and thus that Plaintiff has met its standard under Rule 16.

### B. Rule 15 Futility

Next, Eastern suggests that amendment should be denied as futile. (Dkt. 38, at 5–9). It makes two arguments. First, Eastern argues that Plaintiff's contractual claim fails because the sale was subject to a disclaimer which precludes a fraudulent-inducement claim based on representations outside the four corners of the contract itself. (*Id.* at 6–7); *see Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (disclaimer of reliance can preclude fraud claim based on prior representations). Plaintiff notes, however, that while Eastern uses the phrase "disclaimer of warranty," Eastern actually refers to a "disclaimer of reliance," (Dkt. 38, at 2, 6), and that while a clear and unequivocal disclaimer of reliance clause can preclude a fraud claim, a more general disclaimer or a merger clause does not. (Dkt. 40, at 8–9). "Not every [] disclaimer is effective, and courts must always examine the contract itself and the totality of the surrounding circumstances when determining if a waiver-of-reliance provision is binding." *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019) (quoting *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008)). Moreover, a pure merger clause does not preclude a fraud claim. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 334 (Tex. 2011) ("Pure merger clauses, without an expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement, have never had the effect of precluding claims for fraudulent inducement.").

6

Given that a clear, unequivocal disclaimer of reliance could preclude a fraud claim, but a merger clause does not, the question then becomes whether the contract contains a clear, unequivocal disclaimer of reliance. The relevant contractual language says that the Plaintiff has "disclaim[ed] any representation or warrant, express or implied," and that the "engine package is being sold in its then 'as is, where is' but serviceable condition." (Dkt. 38, at 5). Consistent with the Texas Supreme Court's guidance in *Italian Cowboy Partners*, the Court finds that Eastern has not shown that the contract contained a clear and unequivocal disclaimer of *reliance* specifically, as reliance is not mentioned. 341 S.W.3d, at 336 ("We have repeatedly held that to disclaim reliance, parties must use clear and unequivocal language . . . Here, the contract language was not clear or unequivocal about disclaiming reliance. For instance, the term 'rely' does not appear in any form."). Moreover, the contract also mentions "as is, but serviceable" condition, suggesting that the parties did not waive reliance on guarantees of serviceability in particular. (Dkt. 38, at 5). As such, amendment of the complaint is not futile on this ground.

Second, Eastern argues Plaintiff has not met the heightened pleading requirement for fraud claims, which requires plaintiffs who allege fraud to "state with particularity the circumstances constituting fraud or mistake." (Dkt. 38, at 8 (quoting Fed. R. Civ. P. 9(b))). To comply with Rule 9(b), the plaintiff must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Plaintiff has alleged the speaker, the time, the recipient, and the substance of the statements, and why they were false. Plaintiff also alleges that the statements were made with fraudulent intent, that it acted in reliance on the statements, and damages suffered in reliance on the allegedly fraudulent statements. (Dkt. 40, at 6–7; *see also* Dkt. 36-3). These allegations address all the elements of a fraud claim under Texas law. *See*

7

*Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002) (elements of fraud include "(1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result"). Considering the details pled, the Amended Complaint satisfies the heightened pleading standard for fraud and would survive a motion to dismiss. *See BMSH I Katy TX, LLC v. Smith Seckman Reid, Inc.*, Case 4:22-CV-00218, 2024 WL 4229312, at *7 (S.D. Tex. Sept. 18, 2024) (fraud claim sufficiently alleged and not futile where plaintiff alleged defendant was aware of product flaws, falsely represented condition, knew representations were false, and understood plaintiff would rely on them). The amendment, then, is not futile as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to file its first amended complaint, (Dkt. 36), is **GRANTED**. The Clerk of the Court is **ORDERED** to file the attached amended complaint, (Dkt. 36-3).

**SIGNED** on November 20, 2024.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE